UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY CATHERINE BALDI, | Case No. 1:25-cv-00353-JLT-EPG |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED, IN PART |
| SERVICE FINANCE CO. LLC, | |
| Defendant. | (ECF No. 5) |
| | OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

Plaintiff Mary Catherine Baldi proceeds *pro se* in this civil action that Defendant Service Finance Co. LLC (SFC) removed from the Madera County Superior Court. (ECF No. 1). Generally, Plaintiff alleges that Defendant violated various Federal and State consumer protection statutes in connection with reporting, and attempting to collect, a disputed debt. (ECF No. 1-2, p. 2).

Now before the Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (ECF No. 5, p. 6). The assigned District Judge has referred this motion "for the preparation of findings and recommendations." (ECF No. 12).

As explained below, the Court will recommend that Defendant's motion to dismiss be granted, in part, and denied, in part.

\\\

1

## I.     BACKGROUND

### A.  Summary of the Complaint

Plaintiff's complaint (ECF No. 1) alleges as follows:

Plaintiff entered into a contract with Balanced Comfort for HVAC equipment in September 2022, which contract was subsequently assigned to Defendant. (ECF No. 1-2, p. 3). On April 19, 2024, Defendant communicated with Plaintiff about alleged late payments, with Plaintiff "disput[ing] this assertion, explaining that [her] payments were on time." (*Id.*). That same day, "Plaintiff tendered the full remaining principal balance of $8,504.65." (*Id.*). However, on April 25, 2025, Defendant rejected and returned this payment, without explaining why an additional $1,096.20 was added to Plaintiff's balance. (*Id.* at 3-4). "Despite multiple written requests from Plaintiff for itemization and explanation of the added $1,096.20 charge, Defendant failed to provide any documentation, calculation, or justification for this amount." (*Id.* at 4).

Thereafter, Plaintiff sought to validate the alleged debt she owed along with disputing it to both Defendant and credit reporting agencies. (*Id.* at 4-5).

Plaintiff also alleges that the manner in which Defendant sought to collect the debt violated several consumer protection laws.  For example, Plaintiff alleges:

> Defendant then launched an abusive and malicious collection campaign that included: (1) placing forty-seven (47) automated calls using artificial and pre-recorded voices; (2) continuing communications after receiving written cease-and-desist demands; (3) conducting an unannounced visit to Plaintiff's residence on December 12, 2024; and (4) reporting negative information to credit bureaus without noting Plaintiff's bona fide disputes, which resulted in Plaintiff losing $13,000 from an existing $81,000 credit line.

(*Id.* at 2).

Plaintiff asserts claims under the Fair Credit Reporting Act (FCRA), Telephone Consumer Protection Act (TCPA), the Fair Debt Collection Practices Act (FDCPA), California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), and Fair Credit Billing Act (FCBA). (*Id.* at 9-17). Attached to the complaint and referenced in it are documents concerning Plaintiff's loan, her communications with Defendant about the debt, and Defendant's attempts to contact her. (*Id.* at 20, list of exhibits).

**B.  Defendant's Motion to Dismiss**

On March 31, 2025, Defendant filed a motion to dismiss Plaintiff's complaint with prejudice for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5).

According to Defendant, "[t]he crux of Plaintiff's lawsuit is that SFC allegedly failed to properly 'validate' Plaintiff's debt before proceeding with collection efforts." (*Id.* at 5). Defendant contends that the complaint, and attachments to it, refute Plaintiff's allegations that it failed to validate her debt.

Defendant primarily relies on an August 8, 2024 letter to Plaintiff, which is referenced in and attached to Plaintiff's complaint. In that letter, Defendant reviews the history of the contract Plaintiff entered into regarding the purchase of HVAC equipment.  Defendant then states that "SFC has reviewed the credit reporting associated with this account and validated the accuracy." (ECF No. 6-1, p. 70-71). The letter also attaches several documents regarding Plaintiff's contract, including a Security Agreement and Home Improvement Contract, an Addendum to the Retail Installment Contract, a Service Finance Contract, a ledger of payments Plaintiff made, and a Payoff Notice.  (*Id.* at 71-73; ECF No. 6-2, p. 1-11). Defendant argues that this letter satisfied its obligations under the FCRA, specifically 15 U.S.C. § 1681s-2(b).

In its motion, Defendant also explains why an additional $1,096.20 was added to Plaintiff's balance:

On September 29, 2022, Plaintiff entered into a retail installment contract (the "Contract") with a company named "Balanced Comfort" for the installation of HVAC equipment at her residence. (Complaint, ¶ 5, Ex. 1. [Farkas Decl., Ex. A, p. 6; pp. 24-40].) Under the Contract, Plaintiff agreed to finance the total amount of $25,293.00 (the "Contract Amount"). The Contract Amount was comprised of an initial amount of $16,604.10 financed at the annual percentage rate of 17.991%, resulting in a total finance charge of $8,688.90. (*Id.*; [p. 29.]) The Contract Amount was payable over 5 years with monthly payments in the amount of $421.55. (*Id.*)

Plaintiff also elected to participate in a "Promotional Period Offer." (*Id.*; [p. 34].) Under the terms of the Promotional Period Offer, Plaintiff was required to make monthly payments of principal and interest. If the entire initial amount of $16,604.10 was paid within 24 months (as opposed to 60 months), the finance charge would be waived. (*Id.*) If Plaintiff missed any payments, however, the

Promotion Period Offer would terminate, and Plaintiff would be responsible for the finance charges (*Id.*) The retail installment contract was subsequently assigned to SFC. (*Id.*; [p. 30.].)

Plaintiff made her first payment on October 24, 2022. (Complaint, Ex. 11; [Farkas Decl. Ex. A, pp. 83-85].) Thereafter, she made 15 timely payments in excess of the $421.55 contracted amount. (*Id.*) Beginning on January 1, 2024, however, Plaintiff failed to make her minimum payment. (*Id.*) Under the Contract, between January and April 2024, Plaintiff was required to make 4 payments in the amount of $421.55 totaling $1,686.20, plus an additional $10 late fee for the month of April (totaling $1696.20.) (*Id.*) During this time period, Plaintiff only made $600 in payments. (*Id.*) Having failed to make timely payments under the Contract, Plaintiff's Promotional Period Offer terminated in January 2024, and all finance charges became due. (Complaint Ex. 11 [Farkas Decl. Ex. A, p. 79, 86].)

(ECF No. 5, pp. 6-7).

Defendant also argues that Plaintiff's claims under the TCPA should be dismissed because Plaintiff's revocation of consent to prerecorded or ATDS-assisted calls was limited to the period before SFC had validated the debt. Defendant points to the following language in Plaintiff's letter to SFC dated July 12, 2024, which is referenced in and attached to Plaintiff's complaint:

According to the Fair Debt Collection Practices Act, Section 805(c), the Telephone Consumer Protection Act, and the Federal Debt Collection Practices Act, Section 1692c, excluding the waiver of Section 1692(c), any further communication about this purported debt following receipt of this notice, without delivering appropriate procedural validation, constitutes a violation. A "refusal for cause" will apply to any unsigned correspondence or any communication that fails to identify the individual sender from your organization.  Written communications are permitted solely for conveying settlement proposals or providing debt validation.

(ECF No. 6-1, p. 65) (emphasis added). Defendant argues that because it provided "appropriate procedural validation" through its August 8, 2024 letter, it was permitted to resume communications and debt collection efforts after that date.

Notably, Defendant's motion does not address any of Plaintiff's allegations regarding the methods that Defendant used to collect on the debt.

## C.  Plaintiff's Opposition to Defendant's Motion to Dismiss

Plaintiff filed her opposition to Defendant's motion to dismiss on April 30, 2025. (ECF No. 19).

4

Plaintiff does not refute Defendant's contention that the $1,096.20 charge was in fact valid. However, she claims that Defendant's motion should be denied because "[d]espite multiple requests, SFC never adequately explained or documented this additional charge." (ECF No. 19, p. 2). Plaintiff argues that Defendant was legally required to do "more than merely restating the debt amount or resending the contract—it must address the consumer's specific dispute." (*Id.* at 5). She argues that Defendant violated the law by failing to address her specific dispute, "instead providing generic information about the original contract." (*Id.*). Plaintiff also argues that the Rosenthal Act and FCBA requires debt collectors and creditors to "provide meaningful responses to disputes," which Defendant failed to do because it "failed to explain the basis for the additional charge or provide supporting documentation." (*Id.* at 6).

Regarding whether she consented to communications about the debt, Plaintiff points to Defendant's own contemporary statements that said that Plaintiff had revoked consent to communicate without reservation, including Defendant's statement in its August 8, 2024 letter that "SFC had updated its records to reflect your representation and your request that your client no longer receive further communications." (ECF No. 6-1, p. 71). Plaintiff characterizes these statements as "clear evidence of their agreement to cease communications." (ECF No. 19, p. 2). Moreover, as Plaintiff continues to dispute that Defendant adequately validated her debt, she contends it was not permitted to resume communications under its interpretation of her revocation of consent.

### D.  Defendant's Reply in Support of Motion to Dismiss

Defendant filed a reply in support of its motion on May 9, 2025. (ECF No. 21). Defendant reiterates that it satisfied the statutory requirements for debt validation. Defendant argues that it is not required to address a consumer's specific dispute so long as it provided all of the statutorily required information.

Defendant also argues that it complied with the terms of the revocation of Plaintiff's consent. It summarizes its communication in its August 8, 2024 letter as stating "that it would update its records to reflect Plaintiff's representation and her request that her *client* no longer receive communication." (*Id.* at 3) (emphasis added). However, because Plaintiff is both the

5

representative and the client, Defendant complied with this term by contacting Plaintiff directly in her capacity as a representative.

## II.    LEGAL STANDARDS FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12 permits a party to file a motion to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, pro se pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

Under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." As noted above, Plaintiff attaches various documents to her complaint and references them in it, which documents the Court may consider in reviewing the motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

## III.    ANALYSIS

### A.  Claim 1, Violation of the FCRA

The Court first addresses Defendant's argument that Plaintiff's FCRA claim should be dismissed because Defendant complied with its requirements under 15 U.S.C. § 1681s-2(b).

6

Plaintiff's complaint alleges that Defendant violated § 1681s-2(b), pointing to the following requirements in that statute:

(b) Duties of furnishers of information upon notice of dispute

> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(A)-(E).

Plaintiff's complaint alleges that Defendant violated this statute "by failing to conduct a reasonable investigation of Plaintiff's disputes. Instead, Defendant continued to report inaccurate information to the credit reporting agencies regarding the disputed debt. . . . Defendant failed to modify, delete, or correctly report the disputed information to Experian, Equifax, and TransUnion." (ECF No. 1-2, p. 11).

Defendant argues that this claim should be dismissed because the exhibits attached to Plaintiff's complaint establish that Defendant complied with this statute by conducting an investigation, confirming the accuracy of the debt, and communicating the results of its investigation to Plaintiff. (ECF No. 5, pp. 12-13). Specifically, Defendant's August 8, 2024 letter reviewed the terms of Plaintiff's contract, attached supporting documentation regarding

7

the outstanding balance owed, and stated that it "has reviewed the credit reporting associated

with this account and validated its accuracy." (ECF No. 6-1, p. 71).

Notably, the documents attached to Defendant's letter include an addendum to the retail

installment contract, which states, in part,

> if during the Promotional Period you fail to make a scheduled payment by the thirtieth (30th) day from the date it is due (meaning you make one or more payments late) this Promotional Period Offer will terminate and you will be responsible for paying the Finance Charge, which will accrue as set forth in the Retail Installment Contract.

(ECF No. 6-2, p. 4). Those documents also include a schedule of payments, which shows

Plaintiff paying $200 in the months of January, February, and March 2024, and not making any

payment in April 2024. (*Id.* at 9).

The Court finds that these documents, which were referenced in and attached to

Plaintiff's complaint, show that Defendant "conduct[ed] an investigation with respect to the

disputed information; [and ] review[ed] all relevant information provided by the consumer

reporting agency pursuant to section 1681i(a)(2) of this title." Moreover, because that

information confirmed the accuracy of the debt, Defendant was not required to modify, delete,

or permanently block the reporting of that information.

In her opposition to Defendant's motion to dismiss, Plaintiff concedes the accuracy of

the information, and no longer asserts that Defendant was required to modify, delete, or

permanently block the reporting of that information. Instead, Plaintiff argues that "[t]he FCRA

requires furnishers to conduct a 'reasonable investigation' that addresses the consumer's

specific dispute." (ECF No. 19, p. 7). In support, Plaintiff cites *Gorman v. Wolpoff &

Abramson, LLP* 584 F.3d 1147 (9th Cir. 2009) for the proposition that the "investigation"

required by the FCRA must be reasonable. *See id.* at 1155 & 1157 ("By its ordinary meaning,

an 'investigation' requires an inquiry likely to turn up information about the underlying facts

and positions of the parties, not a cursory or sloppy review of the dispute. . . . We thus follow

the Fourth and Seventh Circuits and hold that the furnisher's investigation pursuant to § 1681s–

2(b)(1)(A) may not be unreasonable.").

However, Plaintiff does not argue, or point to any allegations in her complaint, showing

8

that Defendant's investigation into the debt was unreasonable. Nor does Plaintiff's complaint contain any factual allegations supporting this contention. Rather, the complaint states that "Defendant's failure to conduct a reasonable investigation is evidenced by its continued reporting of the debt as due and owing despite possessing documentation showing the debt was disputed and verification had been requested." (ECF No. 1-2, p. 11). However, an investigation is not unreasonable merely because a debt is disputed and the obligor has requested verification. Here, Defendant's investigation was sufficient to confirm the accuracy of the debt.

Moreover, also in *Gorman*, the Ninth Circuit explained that "[t]he pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." 584 F.3d at 1157. Plaintiff fails to identify, in either her complaint or opposition to the motion to dismiss, anything that was identified in her notice of dispute that Defendant failed to investigate.

Thus, the Court recommends granting Defendant's motion to dismiss Plaintiff's first claim in her complaint brought under the FCRA, 15 U.S.C. § 1681s-2(b), because the exhibits referenced in and attached to the complaint show that Defendant complied with its requirements under that statute, and Plaintiff has failed to allege facts showing that Defendant's investigation was unreasonable under the applicable legal standards.

### B. Claims 2 and 3, Violations of the TCPA

Plaintiff's second and third claims are for violations of the TCPA, under 47 U.S.C. § 227. Specifically, Plaintiff claims that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) "by making forty-seven (47) calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or artificial or prerecorded voice between August 16, 2024, and February 10, 2025," and "continued to place automated calls after Plaintiff explicitly revoked any prior consent through written notices dated July 12, July 26, and August 31, 2024." (ECF No. 1-2, p. 12).

47 U.S.C. § 227(b)(1)(A)(iii) states as follows:

It shall be unlawful for any person within the United States, or any person

9

outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--

(iii)     to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

47 U.S.C. § 227(b)(1)(A)(iii).

Because this was not a debt owed to or guaranteed by the United States, this statute prohibits Defendant from making a call using an automatic telephone dialing system or an artificial or prerecorded voice unless Plaintiff gave her express consent.

In its motion to dismiss, Defendant argues that this claim should be dismissed because, although Plaintiff revoked any prior consent to receive such calls, "Plaintiff's revocation was conditional upon SFC refraining from further communication about Plaintiff's debt '*without delivering appropriate procedural validation.*'" (ECF No. 5, p. 15) (emphasis in original). In opposition, Plaintiff argues that she revoked her consent outright, and in any event, disputes that Defendant's validation of the debt was sufficient. (ECF No. 19, p. 7). Plaintiff also argues that Defendant's own contemporary statements reflect its understanding that Plaintiff had revoked consent unconditionally.

Plaintiff's first notice of dispute, which is referenced in and attached to the complaint, states in relevant part:

According to the Fair Debt Collection Practices Act, Section 805(c), the Telephone Consumer Protection Act, and the Federal Debt Collection Practices Act, Section 1692c, excluding the waiver of Section 1692c(c), **any further communication about this purported debt following receipt of this notice, without delivering appropriate procedural validation, constitutes a violation**. A "refusal for cause" will apply to any unsigned correspondence or any communication that fails to identify the individual sender from your organization. Written communications are permitted solely for conveying settlement proposals or providing debt validation.

(ECF No. 6-1, p. 65) (emphasis added).

Plaintiff states that she also revoked consent in additional letters dated July 26 and

August 31. (ECF No. 19, p. 7; ECF No. 1-2, p. 7). Letters with these dates are attached to the complaint. (ECF No. 1-5, pp. 5-8). While the letters themselves do not contain an explicit revocation of consent, they indicate that Plaintiff attached—or as stated in the letters themselves, "incorporated herein as reference"—her July 12 letter. Thus, the July 26 and August 31 letters could reasonably be construed as reiterating Plaintiff's request from her July 12 letter not to be contacted. Moreover, the Court notes that Plaintiff's letters reiterate her belief that her debt had not been properly validated.

Additionally, the complaint references and attaches an October 31, 2024 letter that Plaintiff sent to Defendant that once again referenced her July 12 letter:

> I have received approximately eighteen phone calls in an attempt to collect a debt from Service Finance on my private cell phone number (510-847-0155). . . . As Service Finance has been notified in writing that it should not continue to contact me (*See* attached debt validation letter dated July 12, 2024) and Service Finance replied in writing to that letter and 3 other times that they not contact me, it is well aware of its obligation to cease from attempting to contact me and that repeated attempts may be considered willful **potentially** resulting in damages of **$9,000.**

(ECF No. 1-2, p. 12; ECF No. 1-4, p. 75 (emphasis in original)).

Lastly, there are multiple letters from Defendant acknowledging requests by Plaintiff not to be contacted at all, *e.g.*, Defendant's August 8 letter states, "In addition, you request that all communication regarding MARY BALDI account be directed to you and that SFC cease all communication with your client" and "SFC has updated its records to reflect your representation and your request that your client no longer receive further communication."[1] (ECF No. 1-4, pp. 1-2). Further, Defendant's letters dated September 6 and 13 materially repeat

---

[1] Defendant's reply tries to downplay the significance of the statements in its letters, arguing as follows: "But Plaintiff is both the representative and the client. SFC's correspondence only states that it would cease communication with her client. If Plaintiff represents herself – then she could still be contacted in her capacity as a representative. This would be the same as if Plaintiff hired an attorney and all communications went through counsel rather than directly to the client. Plaintiff cannot hide behind her July 12, 2024 correspondence to brush aside SFC's attempts at validation and collection." (ECF No. 21, p. 3). This argument is unconvincing. Nothing in Defendant's documents indicate that it held this view of Plaintiff's revocation of consent at the time. Moreover, construed in favor of Plaintiff as the Court must do that this stage, Plaintiff's letters make clear that the revocation of consent concerns herself. For example, Plaintiff repeatedly says that Defendant's repeated calls to her violate her revocation of consent.

these statements. (ECF No. 1-5, pp. 10-11; 31-32).

Notably, "[t]he TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017). "Revocation of consent must be clearly made and express a desire not to be called or texted." *Id.*; *see also Dixon v. Monterey Financial Services, Inc.* (N.D. Cal., June 24, 2016, No. 15-CV-03298-MMC, 2016 WL 3456680, at *3 (noting that "consent is terminated when the [person who obtained consent] knows or has reason to know that the other is no longer willing for him to continue the particular conduct") (*quoting Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014)).

Liberally construing the record in a light most favorable to Plaintiff, Plaintiff has adequately alleged that she revoked her consent. Plaintiff has pled facts, including statements made in multiple letters and Defendant's own summary of her position, indicating that Plaintiff clearly expressed a desire not to be contacted, and Defendant had reason to know that Plaintiff was no longer willing for Defendant to contact her.

Accordingly, the Court will recommend that Plaintiff be permitted to proceed on her TCPA claims as presented in Plaintiff's second and third claims in the complaint.[2]

### C. Claim 4, Violations of the FDCPA

Plaintiff's fourth claim alleges that Defendant violated the FDCPA, 15 U.S.C. § 1692 *et seq.*, by "making communications at times or places known to be inconvenient," "by continuing communications after receiving written cease requests," "by engaging in conduct intended to harass, oppress, or abuse," "by failing to cease collection activities during the validation period and continuing collection efforts without first validating the disputed debt," and similar acts.

Specifically, Plaintiff's complaint alleges as follows:

First, Defendant violated §1692c(a)(l) by making communications at times or places known to be inconvenient, including forty-seven (47) automated calls and an unannounced visit to Plaintiffs residence.

---

[2] While Claims 2 and 3 are presented independently in the complaint, they appear to be based on the same statutory provision and allegations. As defendant has not moved to dismiss either as duplicative, and the parties did not address any differences between them, the Court recommends that both proceed at this time.

Second, Defendant violated §1692c(c) by continuing communications after receiving written cease requests, which Defendant acknowledged in writing on August 8, September 6, and September 13, 2024.

Third, Defendant violated §1692d by engaging in conduct intended to harass, oppress, or abuse through placing forty-seven (47) automated calls between August 16, 2024, and February 10, 2025. Defendant continued calls after receiving multiple cease communication requests, made an unannounced visit to Plaintiffs residence on December 12, 2024, and escalated harassment tactics after receiving written requests to cease communications.

Fourth, Defendant violated § 1692g(b) by failing to cease collection activities during the validation period and continuing collection efforts without first validating the disputed debt.

Defendant violated 12 CFR § 1006.34(c)(2) by failing to provide required validation information, including itemization of the current amount of debt reflecting interest, fees, payments, and credits since the itemization date, and failing to explain the basis for the additional $1,096.20 charge added to Plaintiffs account on April 25, 2024.

Defendant violated 12 CFR § 1006.38(b)(l) by engaging in collection activities during the validation period that overshadowed Plaintiffs right to dispute, including making an unannounced in-person visit on December 12, 2024, while the dispute was pending, and demanding immediate payment on January 9, 2025, while the dispute remained unresolved.

After receiving Plaintiffs December 17, 2024 written dispute, Defendant violated 12 CFR § 1006.38(d)(2) by failing to cease collection activities and failing to provide verification of the debt before resuming collection efforts on January 9, 2025.

Defendant's January 3, 2025 response violated 12 CFR § 1006.38(d)(2)(i) by failing to provide proper verification of the debt, failing to include required itemization of charges, failing to explain the basis for the additional $1,096.20 charge, and failing to meet the clear and conspicuous standard required under 12 CFR § 1006.34(b)(l).

Fifth, Defendant violated § 1692e(8) by failing to communicate that the debt was disputed when reporting information to credit reporting agencies.

(ECF No. 1-2, pp. 13-14).[3]

Defendant's motion to dismiss primarily addresses Plaintiff's allegations under § 1692g. (ECF No. 5, pp. 11-12). As with the FCRA, Defendant argues that it properly

---

[3] The cited regulations are contained in "Regulation F of the Consumer Financial Protection Bureau ('CFPB'), which implements the FDCPA." *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1239 (9th Cir. 2023); *see* 12 C.F.R. § 1006.1(b) (noting that Regulation F "carries out the purposes of the FDCPA").

"responded [to Plaintiff's July 12 letter] within 30 days by providing all of the information required" under the FDCPA in its August 8, 2024 response letter to Plaintiff. (*Id.* at 12). Further, Defendant argues that it properly "ceased further collection activity between the validation request and response." (*Id.*). And, in a separate section of its motion to dismiss discussing the TCPA (not the FDCPA), Defendant argues that, "[h]aving satisfied the condition precedent to any further communications or debt collections efforts, SFC's subsequent communications were proper because the communications were not subject to Plaintiff's revocation." (*Id.* at 16).

In her opposition, Plaintiff argues that Defendant failed to comply with FDCRA's requirement to verify the debt, as set forth in 15 U.S.C. § 1692g(b), which states:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt** or a copy of a judgment, or the name and address of the original creditor, **and a copy of such verification** or judgment, or name and address of the original creditor, **is mailed to the consumer by the debt collector**. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b) (emphasis added). Plaintiff claims that Defendant did not send her verification of the debt because, she argues, "[v]erification entails more than merely restating the debt amount or resending the contract—it must address the consumer's specific dispute," and Defendant's August 8, 2024 letter "fails to provide a breakdown of the disputed amount" or provide a meaningful response to the dispute. (ECF No. 19, pp. 5-6).

In support, Plaintiff cites the case of *Clark v. Capital Credit & Collection Services, Inc.* 460 F.3d 1162, 1174 (9th Cir. 2006), which held that the debt collector in that case satisfied this verification requirement because "upon the [debtor's] request for verification, [the debt collector] obtained information from Dr. Evans about the nature and balance of the outstanding

bill and provided the [debtor] with documentary evidence in the form of the itemized statement." *Id.* at 1174.  In doing so, the Ninth Circuit held "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Id.* at 1173–1174 (citation omitted).

Defendant's verification, as shown by exhibits referenced in and attached to Plaintiff's complaint, satisfied both the terms of the statute and Ninth Circuit's guidance. Defendant obtained verification of the debt and mailed that verification to Plaintiff. It also confirmed in writing that the amount being demanded was what the creditor claimed was owed.

Thus, the Court recommends granting Defendant's motion to dismiss Plaintiff's fourth claim to the extent that it is based on a violation of § 1692g regarding Defendant's requirement to verify the debt and communicate that verification to Plaintiff.

The Court also recommends granting Defendant's motion to dismiss Plaintiff's fourth claim to the extent that it is based on regulations regarding debt verification. Although not directly addressed in the parties' briefing, the Court finds that the following regulations identified in Plaintiff's fourth claim concern debt validation and should be dismissed for the same reasons described above. *See* 12 C.F.R. § 1006.38(b)(1), (d)(2)(i) (providing that, "[d]uring the validation period, a debt collector must not engage in any collection activities or communications that overshadow or are inconsistent with the disclosure of the consumer's rights to dispute the debt and to request the name and address of the original creditor" and "[u]pon receipt of a dispute submitted by the consumer in writing within the validation period, a debt collector must cease collection of the debt, or any disputed portion of the debt, until the debt collector [s]ends a copy either of verification of the debt or of a judgment to the consumer in writing or electronically in the manner required by § 1006.42"); 12 C.F.R. § 1006.34(c)(2)(viii) (noting that "a debt collector must provide the following validation information . . . [a]n itemization of the current amount of the debt reflecting interest, fees, payments, and credits since the itemization date"); 12 C.F.R. § 1006.34(b)(1) (noting that, "[i]n the case of written and electronic disclosures, the location and type size also must be readily noticeable and legible to consumers, although no minimum type size is mandated.").

15

The Court also recommends granting Defendant's motion to dismiss Plaintiff's fourth claim to the extent it is based on 15 U.S.C. § 1692e, which states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8).

The Court finds that Defendant has established, based on documents referenced in and attached to Plaintiff's complaint, that Defendant did not communicate any information known to be false. Moreover, Plaintiff's opposition fails to point to any factual allegations supporting her claim based on this section.

However, the Court recommends denying Defendant's motion to dismiss Plaintiff's fourth claim under the FDCPA to the extent it relates to Defendant engaging in communications and debt collection efforts done without Plaintiff's consent. Specifically, Plaintiff also alleges that Defendant violated 15 U.S.C. § 1692c(a)(1), which states:

> (a) Communication with the consumer generally

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--

> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

15 U.S.C. § 1692c(a)(1).

Plaintiff also brings a claim under 15 U.S.C. § 1692c(c), which states:

> (c) Ceasing communication

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--

16

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c(c)(1)-(3).

Defendant's arguments regarding these sections, to the extent they are addressed at all, are based on the same argument discussed above that Plaintiff's revocation of consent was conditional on Defendant verifying the debt. For the same reasons set forth above, the Court recommends denying Defendant's motion to dismiss on that basis because Plaintiff has alleged sufficient facts at this stage in the case that she revoked her consent to such communications.

Moreover, Defendant's motion to dismiss does not address Plaintiff's claims under the 15 U.S.C. § 1692d, which states:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d. This section does not concern verification or consent. It concerns prohibited methods of debt collection. Plaintiff's complaint sufficiently alleges that Defendant engaged in conduct that was harassing.

In conclusion, the Court recommends granting Defendant's motion to dismiss Plaintiff's fourth claim regarding the FDCPA to the extent it alleges a violation of 15 U.S.C. § 1692g(b), 12 C.F.R. § 1006.38(b)(1), 12 C.F.R. § 1006.38(d)(2), 12 C.F.R. § 1006.34(b)(1); and 12 C.F.R. § 1006.34(c)(2), and denying Defendant's motion to dismiss her fourth claim to the extent it alleges violations of 15 U.S.C. §§ 1692c(a)(1), 1692c(c), and 1692d.

### D. Claim 5, Violations of the Rosenthal Act

Plaintiff's fifth claim alleges that Defendant violated the Rosenthal Act, *see* Cal. Civ. Code § 1788 *et seq.* (ECF No. 1-2, pp. 15-16). The Rosenthal Act contains requirements related to debt verification, communications with a debtor absent consent, and illegal methods of debt collection.

The Court recommends granting Defendant's motion to dismiss Plaintiff's fifth claim to the extent it alleges a violation of § 1788.17 because, as Plaintiff's complaint states, it "incorporates by reference [15 U.S.C. § 1692]" regarding verification of the debt upon request, which the Court has recommended dismissing above. (ECF No. 1-2, p. 16).

However, the Court recommends denying Defendant's motion to dismiss Plaintiff's fifth claim to the extent it alleges violations of provisions unrelated to verification, including § 1788.11(d) and (e), which state:

> No debt collector shall collect or attempt to collect a covered debt by means of the following practices:
>
> (d) Causing a telephone to ring repeatedly or continuously to annoy the person called.
>
> (e) Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable, and to constitute harassment of the debtor under the circumstances.

Cal. Civ. Code § 1788.11(d)-(e).

Similarly, dismissal is not warranted for Plaintiff's claim based on § 1788.12(b), which states:

> No debt collector shall collect or attempt to collect a covered debt or consumer debt, as specified, by means of the following practices:
>
> (b) Communicating information regarding a consumer debt to any member of the debtor's family, other than the debtor's spouse or the parents or guardians of

> the debtor who is either a minor or who resides in the same household with that parent or guardian, prior to obtaining a judgment against the debtor, except where the purpose of the communication is to locate the debtor, or where the debtor or their attorney has consented in writing to that communication.

Cal. Civ. Code § 1788.12(b).

The Court also recommends denying Defendant's motion to dismiss regarding § 1788.14(c) (concerning communications with the debtor when the debtor is represented by an attorney) and § 1788.14(b) (concerning "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered"). Defendants' motion to dismiss does not address these sections, and the Court declines to independently assess whether Plaintiff has alleged sufficient facts to support them.

Thus, the Court recommends granting Defendant's motion to dismiss Plaintiff's fifth claim under the Rosenthal Act, in part, to dismiss Plaintiff's claims under § 1788.17 and to permit Plaintiff to proceed only on alleged violations of § 1788.11(b), (c), 1788.12(b), and § 1788.14(b) and (c).

### E.  Claim 6, Violations of the FCBA

Finally, the Court addresses Plaintiff's sixth claim for violations of the FCBA, 15 U.S.C. § 1666, *et seq.* Plaintiff alleges that Defendant violated this statute

> by failing to acknowledge the dispute within 30 days as required by § 1666(a)(A), failing to conduct a reasonable investigation, failing to provide documentary validation or explanation of the charges within 90 days as required by § 1666(a)(B), continuing collection activities during the validation period in violation of § 1666(c), and demanding payment on January 9, 2025 without first validating the debt.

(ECF No. 1-2, p. 17).

Neither party specifically addresses the provisions of this statute. Defendant merely lists it as one of the statutes it complied with when it validated the debt. (ECF No. 5, p. 11). Plaintiff's opposition also does not specifically address it or cite to any of its provisions.

The Court thus recommends granting Defendant's motion to dismiss Plaintiff's sixth claim for the same reasons addressed in connection with the FCRA and FDCPA investigation

and validation requirements.[4]

## IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons given above, IT IS RECOMMENDED as follows:

(1) Defendant's motion to dismiss (ECF No. 5) be granted, in part.

(2) Specifically, Plaintiff be permitted to proceed on her TCPA claims as presented in her second and third claims; her FDCPA claims alleging violations of 15 U.S.C. §§ 1692c(a)(1), 1692c(c), and 1692(d) as presented in her fourth claim; and her Rosenthal Act claims alleging violations of Cal. Civ. Code, §§ 1788.11(d) and (e), § 1788.12(b), and §§ 1788.14(b) and (c) as set forth in her fifth claim.

(3) All of Plaintiff's other claims be dismissed.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __September 26, 2025__          /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE

---

[4] While the Court recognizes that this claim specifically refers to communications about the debt on January 9, 2025, Plaintiff's opposition offers no argument why Defendant's validation of the debt at this time materially differed from its earlier validation, nor why any differences in this statute are material to the dispute.

20